T.C. Memo. 2002-54

UNITED STATES TAX COURT

LEE G. GALE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

LEE GALE, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos. 4448-97, 1422-98.     Filed February 27, 2002.

Lee G. Gale, pro se.[1]

<u>Ramon Estrada</u> and <u>Christine V. Olsen</u>, for respondent.[1a]

---

[1] Noel W. Spaid, Esq. (Ms. Spaid), filed an Entry of Appearance and represented petitioner at trial.  Ms. Spaid thereafter filed a Motion to Withdraw as Counsel, which was granted.  Ms. Spaid did not prepare or file any briefs on behalf of petitioner.

[1a]Ramon Estrada handled the pretrial preparation and trial of these cases and signed the brief and reply brief for respondent, and Christine V. Olsen signed respondent's supplemental brief regarding I.R.C. §461(f).

MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, <u>Judge</u>:  Respondent determined the following deficiencies, late-filing additions, and accuracy-related penalties with respect to petitioner's Federal income tax:

| Docket No. | Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662 |
|---|---|---|---|---|
| 4448-97 | 1992 | $244,563 | $12,228 | $48,913 |
| 1422-98 | 1993 | 247,317 | 12,366 | 49,463 |
| 1422-98 | 1994 | 61,965 | --- | 12,393 |

After concessions, the following issues are to be decided:

(1) Whether litigation settlement proceeds of $797,225 paid to and placed in petitioner's attorney's trust account in 1992, pending resolution of a fee dispute between petitioner and his attorney, should be reported as income on petitioner's 1992 individual income tax return, or whether the amounts should be reported as income only when paid from the trust account in later years.  We hold that the settlement proceeds were income to petitioner in 1992.

(2) Whether petitioner is entitled to deduct under section 461(f)[2] amounts placed in his attorney's trust account pending resolution of the fee dispute between petitioner and his attorney.  We hold that petitioner is entitled to deduct the

_____

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

amounts placed in his attorney's trust account pending resolution of the fee dispute, but only to the extent that the amounts would have been deductible if the attorney's claims had been undisputed and the amounts held in trust had been paid to the attorney in satisfaction of the attorney's claims. Because it has been established that only $65,685.34 claimed by the attorney for handling petitioner's divorce would not have been deductible if paid, we hold that petitioner is entitled to deduct in 1992, under section 461(f), $729,220.21.

(3) Whether petitioner is entitled to treat any portion of the additional $128,275 claimed on his 1992 return as cost of goods sold. We hold that he is not.

(4) Whether petitioner is entitled to deduct as a business expense any portion of the additional $128,275 that he wrongly claimed as a cost of goods sold on his 1992 return. We uphold respondent's determination allowing a deduction for $35,000 and disallowing any deduction for the balance of $93,275.

(5) Whether petitioner may carry forward total net operating losses of $148,367 from 1990 and 1991 to 1992 and $323,352 from 1992 to 1994. We hold that he may not.

(6) Whether petitioner may deduct depreciation in 1992 that exceeds the amount allowed by respondent. We hold that he may not.

(7) Whether petitioner failed to report various items of income on his 1992, 1993, and 1994 individual income tax returns. We hold that he did, although in lesser amounts than determined by respondent.

(8) Whether petitioner is liable for additions to tax and accuracy-related penalties under sections 6651(a)(1) and 6662(a), respectively. We hold that he is liable for both, although in lesser amounts than determined by respondent.

Respondent's additional adjustments to petitioner's exemptions, itemized deductions, self-employment taxes, and taxable Social Security benefits are computational and will be resolved by our holdings on the foregoing issues.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, first through third supplemental stipulations of facts, associated exhibits, and oral stipulations are incorporated by this reference. Petitioner resided in Newport Beach, California, at the times he filed the petitions in these cases, which have been consolidated for the purposes of trial, briefing, and opinion.

Petitioner's Business and Estate Planning Activities

Over the years, petitioner engaged in several business activities, including cement hauling, retail gasoline sales, residential real estate rentals, and truck and equipment rentals.

Petitioner conducted his hauling business both individually and as president and sole shareholder of Pyramid Commodities, Inc. (Pyramid), an S corporation incorporated in California and licensed by the California Public Utilities Commission (PUC) to haul cement, rock, and sand in Southern California. Petitioner's retail gasoline business was organized as a sole proprietorship and operated under the name Sherrys Exxon. Petitioner's residential real estate and equipment rental activities also were unincorporated businesses. Petitioner used the cash receipts and disbursements method of accounting to compute taxable income for all these activities.

In December 1986, petitioner created the Lee G. Gale Living Trust (living trust) as part of his estate plan. Petitioner's primary purpose in creating the living trust was to avoid or minimize probate costs. Petitioner had exclusive power to revoke or amend the living trust during his lifetime. The living trust instrument designated petitioner as the initial trustee, to be succeeded by Bruce J. Lurie and/or Ronald Foster if petitioner became unable or unwilling to serve. Petitioner purported to fund the living trust by contemporaneously executing a document entitled "Assignment of Assets to Living Trust" (assignment document). In the assignment document, petitioner declared that he assigned to the living trust, without consideration, all the right, title, and interest that he owned or would thereafter

acquire in all of his property, whether tangible or intangible, real, personal, or mixed.

United Ready Mixed Hauling Contract and Subsequent Litigation

In June 1986, petitioner entered into a 5-year contract to haul cement, rock, and sand (hauling contract) for United Ready Mixed Concrete Co., Inc., and its affiliates (United Ready Mixed) on an exclusive basis. The hauling contract contemplated that Pyramid, as a PUC-licensed hauler, would do the actual hauling. Petitioner and Pyramid rented office space, purchased or rented additional trucks and other equipment, and hired and trained new employees to meet the requirements of the hauling contract. Petitioner and Pyramid performed hauling services for United Ready Mixed beginning in June 1986. Later in 1986, United Ready Mixed refused to allow further performance of the hauling contract, refused to pay for hauling services previously received, and terminated the hauling contract.

In 1987, petitioner and Pyramid filed suit against United Ready Mixed for unpaid receivables and for breach of the hauling contract (among other things). Judgment was entered in favor of petitioner and Pyramid in May 1992. In July 1992, there was a settlement agreement whereby United Ready Mixed agreed to pay petitioner and Pyramid $782,500 plus interest. Under the terms of the settlement agreement, United Ready Mixed was required to make payment by check or wire transfer payable to a trust account

created by petitioner's counsel, then Lurie & Hertzberg, and later Lurie & Zepeda (collectively, Lurie & Zepeda).

In late 1992, Lurie & Zepeda received total settlement proceeds of $794,905.55 from United Ready Mixed, and deposited the funds in a client trust account pending resolution of the fee dispute between Lurie & Zepeda and petitioner, described below. United Ready Mixed reported the settlement payment as a payment to petitioner on a 1992 Form 1099-MISC.

Fee Agreement and Dispute Between Petitioner and Lurie & Zepeda

In the 1980s and early 1990s, Lurie & Zepeda represented petitioner in numerous litigation matters, including the United Ready Mixed litigation, various lawsuits initiated by the FDIC against petitioner and others for default on a construction loan, a joint action by petitioner and others against another law firm for legal malpractice, lawsuits arising out of a real estate investment, a divorce proceeding against petitioner's former wife, and litigation involving petitioner's family members.

In 1987, petitioner entered into an hourly written fee agreement with Lurie & Zepeda. In August 1988, petitioner and Lurie & Zepeda modified the agreement (as modified, the fee agreement). In the fee agreement, petitioner agreed to pay Lurie & Zepeda an amount to cover legal fees and expenses incurred through June 30, 1988, and Lurie & Zepeda agreed to bill all fees incurred thereafter at one-half the firm's normal hourly rate.

In exchange for the reduced hourly rate, petitioner agreed to pay a graduated contingency fee that would apply to any recoveries from petitioner's various litigation matters in excess of a specified minimum amount. For a recovery of less than $1 million, Lurie & Zepeda would be entitled to a contingency fee of 25 percent of the amount recovered in excess of $400,000. Petitioner also granted Lurie & Zepeda a lien against his recoveries to secure his obligations under the fee agreement.

Shortly after the fee agreement was executed, a fee dispute arose between petitioner and Lurie & Zepeda. In 1990, to secure payment of $750,000 in disputed fees then owed to Lurie & Zepeda, petitioner granted Lurie & Zepeda a lien against some rental real property he owned.

On the basis of its claims for unpaid legal fees and costs in connection with the various matters on which it represented petitioner, Lurie & Zepeda refused to release any of the United Ready Mixed settlement proceeds to petitioner during 1992. Lurie & Zepeda released the following amounts from the trust account in 1993 and 1994: (1) $5,500 paid on behalf of petitioner to Max Binswenger in 1993; (2) $200,000 paid to Lurie & Zepeda for legal fees in 1993; and (3) $250,000 and $5,391.94 paid to petitioner directly in 1993 and 1994, respectively. Lurie & Zepeda released other amounts in later years not at issue in these cases.

In May 1994, petitioner filed a complaint for legal malpractice, breach of fiduciary duty, and breach of contract against Lurie & Zepeda. Lurie & Zepeda filed a cross-complaint to recover unpaid fees and costs. In May 1995, a default judgment of $796,352.65 plus interest was entered in favor of Lurie & Zepeda. After petitioner filed a notice of appeal, the parties reached a settlement (Lurie & Zepeda settlement) in July 1995, whereby petitioner was permitted to satisfy his obligation under the judgment by paying Lurie & Zepeda $500,000. The settlement sum was to be paid by immediate withdrawal of funds from the United Ready Mixed trust account and by petitioner's payment of the balance plus interest before July 9, 1996. Petitioner fully performed his obligations under the Lurie & Zepeda settlement in 1996.

Petitioner's Reporting Positions for Years at Issue

1992 Individual Income Tax Return

By reason of illness of his return preparer, Sidney Binder (Mr. Binder), petitioner obtained an extension of time to file his 1992 Form 1040, U.S. Individual Income Tax Return (1992 individual return), until August 16, 1993. Petitioner did not file his 1992 return until after the extended due date.

Petitioner reported both his personal activities and those of the living trust on his 1992 individual return. Petitioner included a Schedule C, Profit or Loss from Business (Sole

Proprietorship), for a "Rental Truck & Equip" business, in which he reported gross receipts or sales of $797,225, cost of goods sold of $925,500, and other expenses of $25,939. Petitioner derived the $797,225 gross receipts or sales figure from the Form 1099-MISC issued to him by United Ready Mixed for settlement proceeds paid in 1992 to the Lurie & Zepeda trust account. Mr. Binder advised petitioner to report the settlement proceeds as income on his 1992 return to conform with United Ready Mixed's reporting of the payment on Form 1099-MISC.

Petitioner's 1992 return showed a reduction of income for cost of goods sold, which included the full amount of the United Ready Mixed settlement proceeds. Petitioner treated the deposit of the United Ready Mixed settlement proceeds into Lurie & Zepeda's trust account as a "cost of goods sold" on the basis of Mr. Binder's advice. Mr. Binder advised petitioner that he was entitled to a "cost of goods sold" reduction for the amount of the settlement proceeds because petitioner had not physically received and did not have access to the proceeds in 1992, which were being held by Lurie & Zepeda pending resolution of its attorney's-fee dispute with petitioner.

Petitioner's "cost of goods sold" reduction also included an additional $128,275 of other alleged business costs. The parties agree that petitioner was not entitled to a cost of good sold reduction in any amount because, among other things, petitioner

was not in the business of producing goods for sale. However, petitioner substantiated that $35,000 of the amount wrongly claimed as cost of goods sold represents deductible business expenses, and respondent in the notice of deficiency allowed a deduction of $35,000. Petitioner failed to substantiate with credible evidence that any of the remaining $93,275 claimed as cost of goods sold represents deductible business expenses.

Petitioner reported a net operating loss (NOL) carryover of $148,367 on his 1992 individual return. The NOL carryover consisted of a $105,740 loss carried forward from 1990 (1990 NOL) and a $42,627 loss carried forward from 1991 (1991 NOL). The 1990 and 1991 NOLs were due in large part to losses from Sherrys Exxon reported on Schedule C and to real estate and equipment rental losses reported on Schedule E, Supplemental Income and Loss. Petitioner combined the NOL carryovers from 1990 and 1991 with the losses reported in 1992 to arrive at a 1992 NOL carryforward of $323,352.

Petitioner neither carried back the 1990, 1991, or 1992 NOL to prior years nor elected to relinquish the NOL carryback periods on his 1990, 1991, or 1992 individual return. Petitioner's returns for taxable years 1987, 1988, and 1989 are not in the record.

On Schedule E of his 1992 individual return, petitioner reported a depreciation expense of $15,317, which was

attributable to his equipment rental activity. The depreciation detail schedule listed nine pieces of equipment (one computer, two trucks, three tractors, and three trailers) that generated the $15,317 depreciation expense reported. According to the 1992 individual return (and prior years' returns), the computer was placed in service on May 19, 1986; the trucks and tractors were placed in service on June 1, 1986; and the trailers were placed in service on July 9, 1986. The equipment was depreciated under the Accelerated Cost Recovery System, over a 5-year period, using the straight-line method, with a half-year convention (except for the computer), beginning on the date each asset was placed in service.

### 1993 Individual and Fiduciary Income Tax Returns

By reason of Mr. Binder's illness, petitioner obtained an extension of time to file his 1993 individual income tax return (1993 individual return). Petitioner did not file his 1993 individual return until after the extended due date.

Instead of filing Form 1040 for 1993, petitioner filed Form 1040EZ, Income Tax Return for Single Filers With No Dependents, reporting no taxable income. Mr. Binder had advised petitioner to report all his business and investment activities on Form 1041, U.S. Fiduciary Income Tax Return (1993 fiduciary return), under the name and taxpayer identification number of the living trust. As a result, the 1993 fiduciary return reported

petitioner's gross income from interest, dividends, and residential real estate and equipment rental activities.[3]  The 1993 fiduciary return also included the 1992 NOL carryover of $323,352, which was largely due to prior year Schedule C losses. The 1993 fiduciary return was signed by petitioner as fiduciary or officer representing fiduciary.

### 1994 Individual and Fiduciary Income Tax Returns

Petitioner timely filed his 1994 Form 1040 (1994 individual return).  Other than Social Security payments of $28,405 reported as nontaxable, petitioner reported no gross income on his 1994 individual return.  Petitioner did, however, report the 1992 NOL carryover of $323,352.

As he did for 1993, petitioner reported gross income from interest and his residential real estate and equipment rental activities on the living trust's 1994 Form 1041 (1994 fiduciary return).  In addition, the 1994 fiduciary return reflected an NOL carryover from the 1993 fiduciary return of $525,214.  The 1994 fiduciary return was signed by Ronald Foster as fiduciary or officer representing fiduciary.

### Miscellaneous Transactions Not Reported on Petitioner's Returns

Petitioner opened a bank account at Fidelity Federal Bank in the name of the living trust (trust bank account) in July 1992.

---

[3] Unlike the returns for prior years, the 1993 individual return and the 1993 fiduciary return did not include Schedule C for either Sherrys Exxon or petitioner's "Rental Truck & Equip." activity.

He maintained the account during the years at issue in these cases.

### J&J Trucking Deposits

During 1992, petitioner deposited four checks, each in the amount of $1,399.67, into the trust bank account. Three of the checks were issued by J&J Trucking Co. (J&J Trucking) drawn on San Diego Trust & Savings Bank, and one was a cashier's check issued by the same bank. The check dated October 29, 1992, contained the notation "Truck Pymt. Sept-92".

During 1993, petitioner deposited into the trust bank account 10 checks issued by J&J Trucking totaling $15,396.37. Nine checks were for $1,399.67 and one was for $2,799.34. The checks dated August 10 and October 5, 1993, noted the account or transaction number "9204001".

During 1994, petitioner deposited into the trust bank account 12 checks issued by J&J Trucking, each in the amount of $1,399.67. However, one of those checks was returned because of insufficient funds and was not resubmitted in 1994. Four of the checks bore notations indicating that the payments were sequentially numbered.

### Miscellaneous Items

On October 28, 1993, petitioner paid $17,300 in cash to repay in full a loan obligation to Bank of America. The record

does not disclose the source of funds petitioner used to repay the loan.

During 1994, petitioner deposited $187,574 into the trust bank account, which included the 12 checks of J&J Trucking previously described.  The 1994 fiduciary return for the living trust reported total gross income of $58,859, consisting of: Interest $70, rental income from Onyx property $26,359, and rental income from 31st Street property $32,430.

Statutory Notice Adjustments and Respondent's Concessions

### 1992 Individual Return

On October 7, 1996, respondent issued a notice of deficiency (1992 notice) to petitioner determining a deficiency, addition, and penalty for the year ended December 31, 1992.  After concessions,[4] respondent has continued to assert adjustments for the following items: (1) Unreported interest income of $5,599 from J&J Trucking, (2) unsubstantiated NOL carryforward of $148,367 to 1992, (3) unsubstantiated cost of goods sold reduction of $890,500[5] related to petitioner's Schedule C

---

[4] Respondent conceded that petitioner was entitled to deduct capital losses of $3,000, was not subject to tax on $38,048 of deposits made to the living trust, and was not subject to self-employment tax because he had no self-employment income in 1992.

[5] As previously stated, petitioner claimed an offset for cost of goods sold of $925,500 on his Schedule C for 1992.  The parties agree that petitioner is not entitled to a reduction for cost of goods sold because petitioner did not produce goods.  However, petitioner established, and the 1992 notice of deficiency reflects that respondent allowed, a business deduction for

(continued...)

activity, (4) excess Schedule E depreciation deductions of $15,317, and (5) computational adjustments related to personal exemptions.

### 1993 and 1994 Individual Returns

On December 2, 1996, respondent issued a letter (no change letter) in connection with the audit of petitioner's 1993 and 1994 fiduciary returns, which stated:

> Since there was no material change in the tax you reported, we are accepting your return with the changes noted.  You can contest these changes only when the result changes the amount of your income tax.  Changes that affect carryovers to future years or periods cannot be protested at this time because we are not changing the tax reported on your return.  If additional tax is proposed for a later year based on an adjustment of a carryover reflected in this report, you can contest the issue at that time.

On November 19, 1997, respondent issued a notice of deficiency (1993/1994 notice) to petitioner determining deficiencies, an addition (1993 only), and penalties for the calendar years 1993 and 1994.  After concessions,[6] respondent has continued to assert adjustments for the following items: (1)

---

[5](...continued)
$35,000 of the amount petitioner wrongly claimed as a cost of goods sold.

[6] Under the assumption that petitioner would not be entitled to exclude the United Ready Mixed settlement proceeds from income in 1992 or deduct the payment made to petitioner's attorney's trust account in 1992, respondent conceded that in 1993 petitioner paid to Lurie & Zepeda and was entitled to deduct from gross income in arriving at adjusted gross income under sec. 162 $200,000 in legal fees.  Respondent also conceded that petitioner was not subject to tax on $642,698 and $114,839 of deposits made to the living trust in 1993 and 1994, respectively.

Unreported interest income of $16,796 from J&J Trucking for 1993 and 1994, (2) unreported income of $17,300 related to a currency transaction in 1993, (3) an unsubstantiated NOL carryforward of $323,352 to 1994, (4) unreported rental activity income of $55,939 in 1994, (5) net trust expenses of $14,000 allowed by respondent to offset petitioner's individual income tax liability in 1994, and (6) computational adjustments related to personal exemptions and taxation of Social Security benefits received in 1994.

## OPINION

### Procedural Matters

Before trial, petitioner filed a motion to dismiss the cases at hand on the three following grounds:  (1) The 1992 and 1993/1994 notices were "naked assessments"; (2) the written acceptance of petitioner's 1993 and 1994 tax returns after audit (no change letter) was conclusive of all tax matters for those years; and (3) petitioner was denied his due process rights under the Sixth Amendment to the Constitution because he was not allowed to confront representatives of United Ready Mixed at trial.  We denied petitioner's motion for the reasons stated below.

#### "Naked Assessment" Argument

In general, a deficiency notice is presumed correct and the taxpayer has the burden of proving it wrong.  Rule 142(a)(1);

Welch v. Helvering, 290 U.S. 111 (1933).[7]  However, the presumption of correctness does not apply when the Government's determination is a "'naked' assessment without any foundation whatsoever".  United States v. Janis, 428 U.S. 433, 441 (1976).

An appeal of the cases at hand would lie to the Court of Appeals for the Ninth Circuit, which has held in unreported income cases that the presumption of correctness applies only if the Commissioner's determination is supported by some substantive evidence that the taxpayer received the unreported income.  Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Weimerskirch v. Commissioner, 596 F.2d 358, 360-361 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Petzoldt v. Commissioner, 92 T.C. 661, 687-690 (1989) (discussing Court of Appeals for the Ninth Circuit authorities).  However, once the Commissioner has introduced the necessary "predicate evidence" concerning the unreported income, the taxpayer has the usual burden of establishing, by a preponderance of the evidence, that the Commissioner's determination is arbitrary or erroneous.  Rapp v. Commissioner, supra at 935; Petzoldt v. Commissioner, supra at 689.  The Court

---

[7] The provision of sec. 7491(a) for shifting the burden of proof to the Commissioner applies only to Court proceedings arising in connection with examinations commenced after July 22, 1998, Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726.  In the cases at hand, the notices of deficiency were issued on Oct. 7, 1996, and Nov. 19, 1997.  We find that the examinations were commenced before July 23, 1998.  Therefore, sec. 7491(a) does not apply to the cases at hand.

of Appeals for the Ninth Circuit has described the required evidentiary foundation as "minimal".  Palmer v. IRS, 116 F.3d 1309, 1312-1313 (9th Cir. 1997).

Petitioner's motion asserted that the notices in the cases at hand are "naked assessments" that should not be presumed correct, because respondent failed to show that petitioner personally received the United Ready Mixed settlement proceeds in 1992, and respondent did not allow expense deductions to offset petitioner's reported (1992 notice) or unreported (1993/1994 notice) income.  We disagree.

First, the "naked assessment" notion applies only in unreported income situations.  Petitioner reported the United Ready Mixed settlement proceeds on his 1992 individual return. Statements on a Federal tax return are admissions under the Federal Rules of Evidence and will not be overcome without cogent evidence that they are wrong.  Fed. R. Evid. 801(d)(2); Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989); Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975).  Thus, petitioner's "self-assessment" provided the predicate evidence necessary to link him to the tax-generating activity in 1992.  See Shriver v. Commissioner, 85 T.C. 1, 4 (1985).[8]

_____

[8]By a parity of reasoning, petitioner's admission on his return that he received the income would satisfy any burden on respondent under sec. 6201(d) to produce evidence, in addition to
(continued...)

Regarding the 1993/1994 notice's determinations of unreported income, the Commissioner may satisfy the predicate evidence requirement by showing that the taxpayer was connected to unexplained bank deposits or cash. Weimerskirch v. Commissioner, supra at 362; Schad v. Commissioner, 87 T.C. 609, 618-620 (1986), affd. 827 F.2d 774 (11th Cir. 1987); Tokarski v. Commissioner, 87 T.C. 74 (1986). Here, the record contains ample evidence of bank deposits and cash transactions to support respondent's determination of unreported income.

Second, the "naked assessment" exception to the presumption of correctness applies only to unreported income; the taxpayer always has the burden of proving entitlement to deductions. United States v. Zolla, 724 F.2d 808, 809-810 (9th Cir. 1984). Thus, the fact that respondent did not allow all of petitioner's claimed and unclaimed offsets and deductions does not deprive the 1992 and 1993/1994 notices of the presumption of correctness.

Accordingly, the notices sent to petitioner are adequately supported and are not "naked assessments".

Conclusiveness of No Change Letter

The no change letter, which purported to accept petitioner's 1993 and 1994 fiduciary tax returns as filed, does not resolve all issues regarding petitioner's tax liability for those years.

8(...continued)
the Form 1099-MISC itself, to show that petitioner received the income.

A closing agreement is the only statutorily authorized method for entering into an agreement relating to the taxpayer's liability for any taxable period that binds both the Internal Revenue Service and the taxpayer. Sec. 7121; sec. 301.7121-1(d), Proced. & Admin. Regs; see Botany Worsted Mills v. United States, 278 U.S. 282, 288 (1929); Estate of Meyer v. Commissioner, 58 T.C. 69, 70-71 (1972). A no change letter is not a closing agreement under section 7121; thus, respondent is not bound by any representations in the no change letter. See Miller v. Commissioner, T.C. Memo. 2001-55.

Constitutional Argument

Petitioner's due process rights were not violated because respondent did not produce a witness from United Ready Mixed at trial. The Sixth Amendment to the Constitution, and specifically, the accused's right to be confronted by witnesses, applies only to criminal proceedings, not to civil proceedings for the collection of tax or remedial penalties. U.S. Const. amend. VI; Olshausen v. Commissioner, 273 F.2d 23, 27 (9th Cir. 1959), affg. T.C. Memo. 1958-85. More generally, in this civil tax litigation, respondent is not required to gather witnesses on petitioner's behalf; petitioner is free to subpoena his own witnesses. Rule 147. Petitioner's due process rights were not violated in the cases at hand.

Inclusion of United Ready Mixed Settlement Proceeds

Petitioner reported the United Ready Mixed settlement proceeds of $797,225 as gross receipts or sales on his 1992 individual return.  Petitioner also offset his gross income with a reduction of $925,500 described as "cost of goods sold".  Petitioner included the United Ready Mixed settlement proceeds of $797,225 in his computation of "cost of goods sold" because, according to petitioner, the amounts were not available to him in 1992.  The funds were not available to him because they were paid and deposited to the Lurie & Zepeda trust account and withheld pending resolution of his fee dispute with Lurie & Zepeda.  The balance of the amounts claimed as "cost of goods sold" represented other alleged business expenses.

In the notice of deficiency, respondent disallowed a reduction or deduction for all but $35,000 of the "cost of goods sold" claimed by petitioner.  Petitioner now concedes that the United Ready Mixed settlement proceeds did not constitute a "cost of goods sold".  Petitioner argues instead that the settlement funds should have been excluded from his income in 1992 because he did not have constructive receipt of the funds in 1992 because of his attorney's restriction on his use of the funds.

The Court of Appeals for the Ninth Circuit and this Court have repeatedly held that legal fees paid to recover income, whether contingent or based on hourly rates, are not offsets in

arriving at gross income.[9]  We follow those decisions and treat proceeds from the United Ready Mixed settlement, unreduced by attorney's fees, as gross income to petitioner.  See Golsen v. Commissioner, 54 T.C. 742, 756 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Petitioner, however, argues that the funds should not be included in his income until the restriction on his use of the funds was lifted.  Since petitioner had no use of or even access to the settlement funds during 1992, he argues that the income should not be recognized to him until distributed from his attorney's trust account beginning in 1993.

Section 451 requires income to be included in the taxpayer's gross income in the taxable year of receipt unless the taxpayer's accounting method would properly assign the income to a different tax period.  Sec. 451(a).  Since petitioner is a cash method taxpayer, income is taxable to him upon receipt.

---

[9] Compare Sinyard v. Commissioner, 268 F.3d 756 (9th Cir. 2001), affg. T.C. Memo. 1998-364; Benci-Woodward v. Commissioner, 219 F.3d 941, 943 (9th Cir. 2000), affg. T.C. Memo. 1998-395; Coady v. Commissioner, 213 F.3d 1187 (9th Cir. 2000), affg. T.C. Memo. 1998-291; Brewer v. Commissioner, T.C. Memo. 1997-542, affd. without published opinion 172 F.3d 875 (9th Cir. 1999); Martinez v. Commissioner, T.C. Memo. 1997-126, affd. without published opinion 83 AFTR 2d 99-362, 99-1 USTC par. 50,168 (9th Cir. 1998), with Estate of Clarks v. United States, 202 F.3d 854 (6th Cir. 2000); Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), revg. in part 28 T.C. 947 (1957).  See also Kenseth v. Commissioner, 114 T.C. 399 (2000), affd. 259 F.3d 881 (7th Cir. 2001); Freeman v. Commissioner, T.C. Memo. 2001-254; Banks v. Commissioner, T.C. Memo. 2001-48.

Regulations under section 451(a) define the term "receipt" to include both actual and constructive receipt. Sec. 1.451-1(a), Income Tax Regs. "Constructive receipt" is defined in section 1.451-2(a), Income Tax Regs., as follows:

> (a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

Petitioner focuses on the language of the regulation in arguing that he did not have constructive receipt of the income, because of the restriction placed on his control of the funds by his attorney. Petitioner argues that his "control of its receipt" was "subject to substantial limitations or restrictions"--to wit, his attorney's refusal to release the funds to him.

The constructive receipt doctrine prevents a creditor from "deliberately turn[ing] his back upon the income and thus select[ing] the year for which he will report it." Hamilton Natl. Bank v. Commissioner, 29 B.T.A. 63, 67 (1933); see also Corliss v. Bowers, 281 U.S. 376, 378 (1930) ("The income that is subject to a man's unfettered command and that he is free to

enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not.").

Petitioner assumes he did not have taxable receipt of the settlement proceeds because the funds were paid directly from United Ready Mixed to petitioner's attorney and did not pass through his hands. However, taxable receipt is not limited to physical receipt by the payee. Taxable receipt also occurs when funds are received by the payee's agent on the payee's behalf[10] or by a creditor of the payee on account of the payee's debt.[11]

---

[10]"[R]eceipt by an agent is receipt by the principal." Arnwine v. Commissioner, 696 F.2d 1102, 1107 (5th Cir. 1983), revg. 76 T.C. 532 (1981). Therefore, any agreement between the payee and the payee's agent to defer recognition of the income is ineffective to defer taxable receipt. Id.; Warren v. United States, 613 F.2d 591 (5th Cir. 1980) (attempt by farmer through agreement with cotton gin to defer recognition of income from sale of cotton ineffective because gin was acting as agent for farmer in receiving sale proceeds).

[11]Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929), held that an employer's payment of the employee's taxes constituted receipt by the employee:

> The payment of the tax by the employers was in consideration of the services rendered by the employee and was a gain derived by the employee from his labor. The form of the payment is expressly declared to make no difference. * * * It is therefore immaterial that the taxes were directly paid over to the Government. The discharge by a third person of an obligation to him is equivalent to receipt by the person taxed. * * * We think therefore that the payment constituted income to the employee.

See also Young v. Commissioner, 113 T.C. 152 (1999) (applying rule of Old Colony Trust Co. to sale proceeds paid directly to taxpayer's attorney), affd. 240 F.3d 369 (4th Cir. 2001).

In the cases at hand, petitioner had taxable receipt of the settlement proceeds, even though he did not physically receive them. The funds were paid at petitioner's direction (under the terms of the settlement agreement signed by petitioner) to petitioner's attorney, to be deposited into an attorney/client trust account. Petitioner's attorney was acting as petitioner's agent or petitioner's creditor in receiving the settlement proceeds and depositing them into a trust account pending resolution of an attorney's-fee dispute between petitioner and his counsel unrelated to United Ready Mixed's liability to petitioner. There is no need to consider the doctrine of constructive receipt because petitioner did not delay United Ready Mixed's payment.[12] As between petitioner and United Ready Mixed, the settlement amount was fully paid in 1992. United Ready Mixed retained no interest in the funds after they were paid, at petitioner's direction pursuant to the terms of the settlement agreement, to petitioner's attorney. Any restriction

[12]"Constructive receipt" as defined in sec. 1.451-2(a), Income Tax Regs., is a legal term of art that applies when payment has not been effected because of the payee's postponing payment. The term "constructive receipt" could also be used in its vernacular sense for any payment not physically received by the taxpayer. A taxpayer has "constructive receipt", in its vernacular sense, of funds paid directly to the taxpayer's agents or creditors. The legal doctrine of constructive receipt defined in sec. 1.451-2(a), Income Tax Regs., however, does not apply to completed payments received by a payee's agents or creditors. We have used the term "taxable receipt" to distinguish between physical receipt and nonphysical receipt that the law treats as received for tax purposes.

placed on the use of the settlement proceeds after payment by United Ready Mixed, whether the restriction was placed on the funds voluntarily by petitioner or through acts by petitioner's creditors, does not delay petitioner's receipt of the income for income tax purposes.  See Harris v. Commissioner, 477 F.2d 812 (4th Cir. 1973) (receipt even though funds placed in escrow due to taxpayer's incompetency), revg. 56 T.C. 1165 (1971); Williams v. Commissioner, 219 F.2d 523 (5th Cir. 1955) (receipt when payments made to escrow set up by taxpayer); Sproull v. Commissioner, 16 T.C. 244 (1951) (receipt on payment to trust), affd. 194 F.2d 541 (6th Cir. 1952); cf. Reed v. Commissioner, 723 F.2d 138 (1st Cir. 1983) (no receipt where escrow arrangement was bona fide deferred payment agreement between buyer and seller); Busby v. Commissioner, 679 F.2d 48 (5th Cir. 1982) (no receipt to seller where payment was made to buyer's agent).

Respondent admits that at trial he conceded that petitioner did not have receipt of the United Ready Mixed settlement proceeds in 1992, because of the restriction placed on the funds by petitioner's attorney.  However, in his reply brief, respondent repudiated his concession,[13] relying on Sullivan v.

_____

[13]In his reply brief, respondent states:

In view of Sullivan, respondent has reexamined the position taken at trial and on opening brief with respect to the timing of the taxability of the Ready Mixed settlement proceeds.  Respondent is changing his position in this case to be consistent with the holding
(continued...)

Commissioner, T.C. Memo. 1999-341, published the day respondent filed his opening brief in these cases.

In Sullivan, the taxpayer received an award of $942,112.50 plus interest and costs in a personal injury lawsuit. After judgment was entered, but before it was paid, a guardian ad litem was appointed for the taxpayer in connection with a divorce proceeding instituted by his wife. The attorneys and the guardian agreed that the judgment proceeds would be deposited in an interest-bearing escrow account pending the family court's directions regarding the disbursement of the funds. Mr. Sullivan endorsed the check for deposit into the escrow account. This Court, focusing on Mr. Sullivan's signature on the check, determined that the income was taxable to Mr. Sullivan when it was deposited into the escrow account. In Sullivan, we stated:

> although the placing of the check proceeds into escrow accounts pending resolution of disputes over the amount of attorney's fees and the amount of Mrs. Sullivan's share of the marital estate was a substantial restriction over * * * [Mr. Sullivan's] ultimate disposition of the judgment proceeds, these restrictions did not limit * * * [Mr. Sullivan's] legal entitlement to the judgment award and interest in 1989. Because he received and endorsed the check for the judgment with interest in 1989, that is the year in which * * * [Mr. Sullivan] must report the entire amount of interest. [Id.]

---

[13](...continued)
in Sullivan. Respondent now asserts that the Ready Mixed settlement proceeds were constructively received in 1992.

On the basis of Sullivan--a decision that did not announce a new rule of law--respondent argued in his reply brief that the United Ready Mixed settlement proceeds should be taxed as income to petitioner in 1992.[14]

Respondent also argues that "Petitioner is not harmed by respondent's change in position as respondent's new position is consistent with petitioner's own treatment of the proceeds on his 1992 return". We disagree with respondent's statement. Petitioner may have relied on respondent's trial and briefing concession in failing to introduce evidence and submit argument to support a deduction for amounts paid to his attorney and placed in trust in 1992 pending resolution of the attorney's-fee dispute. Respondent's change of position after trial created new legal and factual issues; petitioner did not have an opportunity to introduce evidence on these new issues because respondent did not change his position until after the trial was completed.

We have refused to allow the Commissioner to withdraw factual concessions after trial where there would be prejudice to the opposing party. See Glass v. Commissioner, T.C. Memo. 1988-550 ("In his brief, respondent seeks to withdraw the concession. We are not inclined to accept such withdrawal,

---

[14]In his reply brief, respondent states: "In light of Sullivan, respondent hereby changes the position taken in his opening brief, and asserts that petitioner received taxable Ready Mixed settlement proceeds in the amount of $797,225.00 in 1992, the year such proceeds were deposited into Lurie and Zepeda's client trust fund."

however, as it would put petitioner at a disadvantage, since it tried and argued the case in light of the concession."); <u>Cogan v. Commissioner</u>, T.C. Memo. 1980-328 ("Petitioners had every right to rely on the concession of respondent's counsel at trial and we will not permit respondent to withdraw his concession or attempt to modify it after trial.").

In the cases at hand, respondent took the position that petitioner did not have receipt of the settlement proceeds in 1992 only after the trial commenced.  In the notice of deficiency, respondent took the position that the proceeds were taxable in 1992.  We therefore do not elect to hold respondent to his trial concession.  However, we should ameliorate any harm to petitioner by requiring respondent to bear the burden of proving all factual issues arising out of respondent's change in position.  See Rule 142(a)(1) (burden of proof on petitioner "except as otherwise provided by statute or determined by the Court").

We agree with respondent that the settlement proceeds paid by United Ready Mixed in 1992 constitute income to petitioner in 1992.  There were no restrictions placed by United Ready Mixed on petitioner's use of the funds, and the payment was made to petitioner's attorney's trust account at petitioner's direction pursuant to the settlement agreement.  Petitioner's counsel was acting as either petitioner's agent or petitioner's creditor in

receiving and holding the funds. Petitioner thus had taxable receipt of the income in 1992.

Petitioner's Section 461(f) Deduction

After respondent withdrew his concession that the amounts paid by United Ready Mixed to petitioner's attorney's trust account did not constitute gross income to petitioner in 1992, the Court asked respondent to address in a supplemental brief whether petitioner is entitled under section 461(f) to a deduction in 1992 for the amounts paid to petitioner's counsel and held in trust pending resolution of the attorney's-fee dispute.

Section 461(f) allows a deduction for amounts paid in connection with a contested claim pending resolution of the contest. It was enacted in response to cases holding that accrual method taxpayers could not deduct amounts paid in connection with contested liabilities because the fact of the liability had not been established. United States v. Consol. Edison Co., 366 U.S. 380 (1961); S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 502, 604. However, section 461(f) by its terms applies to both accrual and cash method taxpayers. Weber v. Commissioner, 70 T.C. 52, 55 n.4 (1978) ("Respondent initially asserted that this section [461(f)] applies only to accrual and not cash basis taxpayers, but this

position has not been discussed on brief and is clearly erroneous.").

Section 461(f) allows a deduction only if four elements are present: (1) The taxpayer must contest an asserted liability, (2) the taxpayer must transfer money or property to provide for the satisfaction of the asserted liability, (3) the contest must continue after the transfer, and (4) a deduction would be allowed for the transfer under applicable law if the liability were not contested.

In his supplemental brief, respondent concedes that petitioner is entitled to a deduction in 1992 under section 461(f) for the amount of legal fees claimed by Lurie & Zepeda in connection with the United Ready Mixed litigation. Respondent argues, however, that the United Ready Mixed settlement proceeds substantially exceed the fees to which Lurie & Zepeda were entitled in connection with the United Ready Mixed litigation, and that petitioner failed to prove that he would have been entitled to a deduction if he had paid the balance of the fees claimed by Lurie & Zepeda for other legal matters they handled for him.

There are significant gaps in the record. The record shows that petitioner owed Lurie & Zepeda $348,114.21 in hourly legal fees and costs as of November 30, 1992, in connection with the United Ready Mixed matter, $65,685.34 in legal fees and costs as of 1995 in connection with petitioner's divorce (the amount owing

in 1992 is not in the record), and $103,175.05 as of 1992 in connection with the so-called Emerald Bay matter. The record shows that Lurie & Zepeda claimed additional amounts (exceeding the entire United Ready Mixed settlement proceeds) for contingency fees in the United Ready Mixed matter and hourly and contingency fees in numerous other matters. The specific amounts owing for each matter as of the end of 1992 and the nature of each of the matters were not established at trial.

Respondent contends that we should allow a deduction only for the fees petitioner proved at trial would have been deductible if paid without contest. Respondent argues that petitioner failed to establish an entitlement to a deduction exceeding the hourly fees and costs claimed by Lurie & Zepeda as of November 30, 1992, in connection with the United Ready Mixed matter ($348,114.21).

We agree with respondent that the record is incomplete. However, petitioner does not bear the burden of proof here. Respondent created this issue by withdrawing his trial concession that the United Ready Mixed settlement proceeds are not taxable in 1992. As a result of respondent's change of position after the completion of the trial, petitioner did not have a full and fair opportunity to introduce evidence to establish the deductibility of the amounts claimed by Lurie & Zepeda. It is appropriate for respondent to bear the burden of proof on new

issues caused by his change of position. See Rule 142(a)(1). Therefore, respondent bears the burden of proving which amounts claimed by Lurie & Zepeda would not have been deductible if paid without contest.

Respondent had an opportunity at trial to meet his burden of proof. Respondent called the custodian of records for Lurie & Zepeda to testify at trial. Respondent could have questioned the custodian to determine the specific amounts claimed by Lurie & Zepeda at the end of 1992, for which matters the amounts were claimed, and whether each of the matters related to deductible trade or business or investment matters or nondeductible personal matters. Respondent failed to make the necessary inquiries.

It is undisputed that Lurie & Zepeda asserted a claim for legal fees exceeding the United Ready Mixed settlement proceeds. In connection with a later dispute between petitioner and Lurie & Zepeda in May 1995 (after substantial payments had been made to Lurie & Zepeda), Lurie & Zepeda recovered a judgment against petitioner for $796,352.65.

The only amount claimed by Lurie & Zepeda that respondent has established would not have been deductible if paid without dispute was the $65,685.34 in legal fees and costs owing as of 1995 in connection with petitioner's divorce. Legal fees incurred in connection with petitioner's divorce generally would not be deductible. United States v. Patrick, 372 U.S. 53 (1963);

United States v. Gilmore, 372 U.S. 39 (1963); see also sec. 262 (disallowing deductions for personal, living, and family expenses). Because petitioner's divorce was concluded before 1992, we infer that this $65,685.34 was owing in 1992 as well and deny petitioner a deduction for this amount.

Except for the fees incurred in connection with petitioner's divorce, which are clearly not deductible, respondent failed to establish that any of the fees claimed by Lurie & Zepeda would not have been deductible if paid without contest. Respondent adduced evidence of the fees and costs owing on only one other matter, the Emerald Bay matter for which Lurie & Zepeda claimed fees of $103,175.05 as of 1992. The Emerald Bay matter involved a business or investment expense--a dispute over a note payable in connection with the sale of investment property. Respondent failed to establish that petitioner would not be entitled to a deduction if these fees had been paid without contest. Respondent offered no evidence that petitioner would have been denied a deduction if any of the other fees claimed by Lurie & Zepeda had been paid without contest. Therefore, petitioner is entitled to deduct in 1992 $729,220.21, representing the full $794,905.55 he paid to Lurie & Zepeda in 1992 (and withheld in trust pending resolution of the fee dispute) less the $65,685.34 in

nondeductible fees owing in connection with petitioner's divorce.[15]

Deductibility of Other 1992 Expenses

On his 1992 tax return, petitioner claimed "cost of goods sold" of $925,500, consisting of $797,225 representing an offset to the United Ready Mixed settlement proceeds and $128,275 representing other reductions or deductions.

While properly disallowing any cost of goods sold reduction,[16] respondent allowed business expense deductions for $35,000 of the remaining $128,275 petitioner claimed as cost of goods sold and disallowed the balance. To substantiate trade or business expense deductions for the remaining $93,275 which he wrongly claimed as a cost of goods sold, petitioner provided a disbursements journal for the year 1992 (1992 disbursements journal), which listed checks written during the year by category of expense. The expense categories included: "Onyx", "Mercedes",

---

[15]Respondent has conceded that any legal fees petitioner paid would be deductible as a trade or business expense under sec. 162 would be deducted "above the line" in arriving at petitioner's adjusted gross income under sec. 62(a)(1). See, e.g., Guill v. Commissioner, 112 T.C. 325 (1999).

[16]Petitioner has conceded that it was improper for him to claim "cost of goods sold". Petitioner was in the rental truck and equipment business. Petitioner did not produce goods for sale to customers. The expenses of engaging in an equipment rental activity are not a cost of goods sold. The expenses may be deductible as ordinary trade or business expenses under secs. 62(a)(1) and 162. Petitioner alleges that the amounts he improperly claimed as cost of goods should constitute deductible trade or business expenses.

"Trk Rental", "Equip. Pmts.", "Legal", "Lee Gale Livg Trst", "W2P", "Ofc Rent & Acctg", "Enttnmnt", and "Pers". The 1992 disbursements journal did not provide clear totals for each category of expense, did not show which expenses made up the $128,275 additional expense figure, and did not indicate which expenses had already been reported on Schedule C or E of the 1992 individual return.

As a general rule, the taxpayer has the burden of proving entitlement to deductions. United States v. Zolla, 724 F.2d at 809-810. The taxpayer must maintain records sufficient to prove his entitlement to any deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

In the cases at hand, petitioner has not substantiated his entitlement to business expense deductions for any portion of the remaining $93,275 which he claimed as a cost of goods sold in 1992. Thus, petitioner was required to substantiate the disallowed balance of $93,275, which he has attempted to do by referring us to his 1992 disbursements journal.

We told petitioner at trial that he must provide additional evidence to support his trade or business expense deductions and held the record open to give him an opportunity to do this. Without such evidence, we have no assurance that deductions already reported in other areas of petitioner's 1992 individual return (e.g., Schedule C other expenses of $25,939 and Schedule E

rental expenses of $52,609) are not being double counted as part of the mislabeled "cost of goods sold". Additionally, it appears that the 1992 disbursements journal tracks personal as well as business expenses, without clearly differentiating between them. Petitioner failed to introduce any further documentation or other evidence to support his deductions. We therefore agree with respondent's determination allowing a trade or business expense deduction for only $35,000 of the $93,275 wrongly claimed by petitioner as "cost of goods sold".

Income and Deductions in 1993 and 1994 for Amounts Withdrawn From Trust Account

Any amounts deducted in 1992 under section 461(f) are treated as income and subject to taxation in the year recovered by petitioner, under the tax benefit rule. See, e.g., Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370 (1983); G.M. Standifer Constr. Corp. v. Commissioner, 30 B.T.A. 184 (1934) (on settlement of dispute, taxpayer subject to tax on previously deducted litigation reserves). To prevent double deductions, no additional deduction is allowed for amounts paid from the attorney trust account to the attorneys on account of legal fees and expenses.

Petitioner therefore received taxable income in the amounts of $255,500 in 1993[17] and $5,391.94 in 1994, for distributions from the trust account to him (or for his benefit).

NOL Issues

Section 172(a) allows as a deduction for a taxable year the aggregate of NOL carryovers and carrybacks to that year.  For the years before the Court, an NOL must be carried back to each of the 3 years preceding the taxable year of loss and carried over to each of the 15 years following the year of such loss.  Sec. 172(b)(1)(A).  The entire amount of the NOL must first be carried to the earliest eligible carryback year.  Thereafter, the excess (if any) of the NOL over the taxable income for each of the prior taxable years to which such loss was carried must be carried to each of the succeeding years.  Sec. 172(b)(2); sec. 1.172-4(a)(3) and (b), Income Tax Regs.  A taxpayer may, however, elect to relinquish the carryback period.  The election must be made, in a prescribed manner, by the due date (including extensions) for filing the taxpayer's return for the NOL year in which the election is to be in effect.  Sec. 172(b)(3).

Petitioner reported an NOL carryover of $148,367 on his 1992 individual return.  The carryover consisted of losses carried forward from 1990 and 1991.  Petitioner combined the NOL

---

[17]Consisting of the $250,000 paid to petitioner and $5,500 paid to Max Binswenger on petitioner's behalf.

carryovers from 1990 and 1991 with losses for 1992 to arrive at a 1992 NOL carryover of $323,352, which he subsequently applied to his 1994 individual return.  Petitioner provided nothing more than his 1990 and 1991 individual income tax returns as proof of the 1990 and 1991 NOLs.  Petitioner did not produce his books and records for the affected years or any other documentation to substantiate the claimed losses.  Respondent specifically asked for such documentation in his Request for Production of Documents (document request), which he served on petitioner in March 1999. At trial, petitioner offered conflicting testimony regarding whether or not he had provided substantiation for the NOL carryovers.  Initially, he said that he did not supply records to respondent substantiating his 1990 and 1991 NOLs after petitions were filed in these cases, because he did not recall receiving respondent's document request.  Next, he said that he failed to produce the requested documentation because he did not have records going back that far.  Finally, petitioner claimed that he did not provide respondent with the requested documentation before trial because he had given it to the Internal Revenue Service agent in connection with the 1992 audit, and the agent had not returned it.

A tax return is merely a statement of the taxpayer's claim and does not establish the truth of the matters set forth therein.  <u>Wilkinson v. Commissioner</u>, 71 T.C. 633, 639 (1979).

Petitioner's 1990 and 1991 individual returns do not, by themselves, adequately substantiate the 1990 and 1991 NOLs. Petitioner's explanations for the lack of any further substantiation are contradictory and incredible. We hold, therefore, that petitioner did not meet his burden of proof regarding the 1990 and 1991 NOL carryovers to 1992 and 1994. See McWilliams v. Commissioner, T.C. Memo. 1995-454.

Even if petitioner had provided the requested documentation, he did not elect to relinquish the NOL carrybacks from 1990, 1991, and 1992. Under the general rule, the 1990 NOL first should have been carried back to 1987, 1988, and 1989 before being carried forward to 1991. Sec. 172(b)(1) and (2). Similarly, the 1991 NOL should have been carried back to 1988, 1989, and 1990, and the 1992 NOL should have been carried back to 1989, 1990, and 1991. Petitioner stated on the record that no elections under section 172(b)(3) were filed for any of the affected years. In addition, there is nothing in the record that provides any basis from which we could determine the amounts of the 1990, 1991, and 1992 NOLs that were absorbed in the years before 1990, the earliest year for which a tax return was included in the record. Accordingly, petitioner has not shown that he is entitled to deductions under section 172 for taxable years 1992 and 1994. See Welch v. Commissioner, T.C. Memo. 1998-121, affd. 204 F.3d 1228 (9th Cir. 2000).

Depreciation Issue

Petitioner deducted on his 1992 return depreciation for property placed in service in 1986. Petitioner indicated on his return that the property had a 5-year class life and was subject to the half-year convention.[18] Thus, based on the admissions contained in petitioner's tax return, the property would have been fully depreciated in 1991.

At trial, petitioner claimed that his accountant made a mistake, because the property should have had a 7-year class life rather than a 5-year class life. Petitioner introduced no evidence to support his contention that the property should have had a 7-year class life rather than a 5-year class life and no evidence that he had not recognized depreciation deductions totaling the full cost of the property in previous years. See sec. 1016(a)(2) (basis reduced by all depreciation allowed, but not less than amount allowable). Petitioner therefore failed to substantiate his deduction for depreciation, and the deduction is disallowed.

Unreported Income Issue

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or

---

[18] The convention that petitioner applied to depreciate his computer is not clear from the record. However, as 5-year property depreciated using the straight-line method, the computer should also have been fully depreciated by no later than 1991.

her gross income.  Sec. 6001; <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); sec. 1.6001-1(a), Income Tax Regs.  If the taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute taxable income by any method that clearly reflects income.  Sec. 446(b); <u>Holland v. United States</u>, 348 U.S. 121 (1954).  The Commissioner enjoys substantial latitude in determining which method of computation to apply in order to reconstruct the income of a taxpayer who fails to maintain or produce records.  <u>Estate of Rau v. Commissioner</u>, 301 F.2d 51, 54 (9th Cir. 1962), affg. T.C. Memo. 1959-117; <u>Petzoldt v. Commissioner</u>, 92 T.C. at 693.  The reconstruction of income need only be reasonable in light of all the surrounding facts and circumstances.  <u>Giddio v. Commissioner</u>, 54 T.C. 1530, 1533 (1970).

This Court consistently has allowed the use of the bank deposits method for reconstructing income.  <u>Clayton v. Commissioner</u>, 102 T.C. 632, 647 (1994); <u>DiLeo v. Commissioner</u>, <u>supra</u>; <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977).  Once there is evidence of actual receipt of funds by the taxpayer, then the taxpayer has the burden of proving that all or part of those funds are not taxable.  <u>Tokarski v. Commissioner</u>, 87 T.C. 74 (1986).

In the cases at hand, respondent used the bank deposits method to determine that petitioner underreported income for the years at issue. Because the living trust was established by petitioner as a revocable trust, of which he was beneficiary and trustee, respondent attributed income deposited into the trust bank account or reported on the fiduciary income tax returns to petitioner. Secs. 61, 671. Petitioner has conceded that all of the trust's income was properly taxable to him.

For 1992, petitioner did not file a fiduciary income tax return. He reported both personal and business income on his individual income tax return. Respondent's only assertion of unreported income for that year related to the J&J Trucking payments (totaling $5,598.68) that were deposited into the trust bank account during 1992. Petitioner did not provide any documentary evidence showing that the periodic J&J Trucking payments were not income to him. In testimony, petitioner neither confirmed nor denied receiving the amounts, stating that "the documents should speak for themselves". Accordingly, petitioner has failed to meet his burden of proving that respondent's determination was erroneous. See Rule 142(a)(1).

For 1993, petitioner filed separate individual and fiduciary income tax returns, reporting all his business and personal income on the fiduciary return. The trust bank account statements reflected deposits of 10 checks issued by J&J Trucking

totaling $15,396.37.[19] As previously stated, petitioner has failed to meet his burden of proof on this issue, see Rule 142(a)(1); we therefore hold that the J&J Trucking payments of $15,396.37 are includable in petitioner's gross income for 1993.

Petitioner admitted that in 1993 he repaid a loan to Bank of America of $17,300. Petitioner did not establish the source of the funds he used to repay this loan. Petitioner testified that the living trust either had the money on hand or borrowed it to repay the loan. After reviewing the trust bank account statements on and around the loan repayment date, we cannot find a withdrawal or check that approximates the $17,300 payoff amount. Nor has petitioner provided any loan documentation to support his suggestion that the Bank of America loan was satisfied using newly borrowed funds. Respondent determined that petitioner used unreported income to repay the loan. Because petitioner has failed to meet his burden of establishing the source of the funds used to repay the loan, see Rule 142(a)(1), we sustain respondent's determination that petitioner used unreported income to repay the loan.

For 1994, petitioner filed separate individual and fiduciary income tax returns, reporting all his business and personal income on the fiduciary return. The trust bank account

---

[19] This is contrary to respondent's assertion that J&J Trucking payments totaled $16,796 for 1993.

statements reflected deposits of 12 J&J Trucking checks for $1,399.67 each, with one of those checks being returned for insufficient funds, for net deposits of $15,396.37.[20] Petitioner again has failed to meet his burden of proof on this issue, see Rule 142(a)(1); we therefore hold that the J&J Trucking payments of $15,396.37 are includable in petitioner's gross income for 1994.

Also during 1994, petitioner deposited $187,574 into the trust bank account, which included the J&J Trucking deposits previously described. Respondent conceded that $114,839 of those deposits represented either nontaxable items or taxable amounts that were already reported by petitioner on his 1994 fiduciary return. Accordingly, petitioner was left to account for $57,339 of unreported income.[21]

Our review of the trust bank account statements and copies of deposited checks indicates that the deposits at issue related to petitioner's real property or equipment rental activities. However, petitioner has not provided any documentary evidence to show that the amounts were nontaxable. Because petitioner has failed to meet his burden of proof on this issue, see Rule

---

[20] This is contrary to respondent's assertion that J&J Trucking payments totaled $16,796 for 1994.

[21] $187,574 deposits minus $114,839 concessions minus $15,396.37 J&J Trucking payments equals $57,339 (rounded).

142(a)(1), we hold that deposits of $57,339 are includable in petitioner's gross income for 1994 as taxable rents.

Late-Filing Additions to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return by the required filing date, including extensions. The addition is 5 percent of the amount required to be shown as tax on the delinquent return for each month the return is late (not to exceed 25 percent). Id. The taxpayer is excused from the late-filing addition if he shows that the late filing was due to reasonable cause and not due to willful neglect, id.; however, the taxpayer bears the burden of proof on this issue, Rule 142(a)(1); BJR Corp. v. Commissioner, 67 T.C. 111, 131 (1976).

In the cases at hand, petitioner filed his 1992 and 1993 individual tax returns after the extended due date. At trial, petitioner explained why he had requested the extension but not why he filed after the extended date. Because petitioner has not met his burden of proving reasonable cause for the late filings, he is liable for the section 6651(a)(1) addition to tax. See Rule 142(a)(1).

Accuracy-Related Penalties

Section 6662 imposes a 20-percent penalty on any portion of an underpayment of tax that is attributable to, among other things, negligence or disregard of rules or regulations. Sec. 6662(a) and (b).

"Negligence" includes any failure to: (1) Make a reasonable attempt to comply with the provisions of the internal revenue laws, (2) exercise ordinary and reasonable care in preparing a tax return, or (3) keep adequate books and records or substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is indicated if a taxpayer fails to include on an income tax return an amount of income shown on an information return or fails to make a reasonable attempt to ascertain the correctness of a deduction, credit, or exclusion on a return that would seem to a reasonable and prudent person to be "too good to be true" under the circumstances. Sec. 1.6662-3(b)(1)(i) and (ii), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Section 6664 provides an exception to the imposition of accuracy-related penalties if the taxpayer shows that there was reasonable cause for any portion of the underpayment, and that the taxpayer acted in good faith. Sec. 6664(c); United States v. Boyle, 469 U.S. 241, 242 (1985). Whether a taxpayer has acted with reasonable cause and in good faith is a factual question. Sec. 1.6664-4(b), Income Tax Regs. Generally, the most important factor is the extent to which the taxpayer exercised ordinary business care and prudence in attempting to assess his proper tax liability. Id. Reliance on the advice of a professional (such

as an appraiser, attorney, or accountant) constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioner bears the burden of proving that he is not liable for the accuracy-related penalties determined in the notices of deficiency.  See Rule 142(a)(1).

In the notices of deficiency, respondent determined 20-percent accuracy-related penalties for each of the years in issue.  We agree in part and disagree in part.

For 1992, petitioner is not liable for any accuracy-related penalty in connection with any portion of the underpayment attributable to the disallowance of a deduction or reduction for the attorney's fees paid to Lurie & Zepeda.  Petitioner acted in good faith and reasonably relied on his professional tax adviser, Mr. Binder, to properly report the United Ready Mixed settlement, a complicated transaction affecting multiple tax years. Petitioner disclosed the United Ready Mixed proceeds reported on the 1992 Form 1099-MISC as business income on his 1992 individual return.  Mr. Binder advised petitioner that he could offset the reported income with a cost of goods sold reduction, inasmuch as petitioner had not actually received the settlement proceeds in 1992.  While it was wrong for petitioner to report a cost of goods sold reduction rather than a section 461(f) deduction (and

to deduct the portion representing nondeductible fees), the notion of offsetting amounts that were never physically received would not seem to a layman to be "too good to be true". Respondent's contradictory positions at trial and in posttrial briefs regarding the proper treatment of the United Ready Mixed settlement proceeds support our finding that petitioner acted reasonably and prudently when he relied on Mr. Binder regarding the proper way to report the transaction.

On the other hand, petitioner is liable for an accuracy-related penalty to the extent that petitioner's disallowed cost of goods sold reduction of $93,275 results in an underpayment. Petitioner offered no evidence to support this claimed cost of goods sold reduction in excess of the United Ready Mixed settlement proceeds.

With respect to all years, petitioner is liable for an accuracy-related penalty to the extent his underpayment is attributable to the following items: (1) The disallowed net operating loss carryforward deductions, (2) the disallowed depreciation deductions, and (3) the unreported income petitioner is required to recognize. Petitioner's treatment of these items was negligent and in disregard of rules and regulations, and his purported reliance on his accountant was not reasonable.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.