United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 27, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60463

_____

PAUL A. TANNER, SR.; BEVERLY N. TANNER,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeal from the Decision of the United States Tax Court
No. 5738-00
_____

Before REAVLEY, JOLLY and JONES, Circuit Judges.

PER CURIAM:[*]

Paul and Beverly Tanner appeal the decision of the Tax Court holding that they had unreported income of $728,000 in 1994 based on Paul's exercise of employee nonstatutory stock options for 182,000 shares of Polyphase Corporation. Paul was, at that time, the president, chief executive officer, and chairman of the board of Polyphase, and he also held about sixty-five percent of Polyphase's outstanding stock. The Commissioner issued a notice of deficiency for the unreported income several years later, after

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

receiving a Form 1099 from the company.  Finding no error in the Tax Court's decision, we affirm.

The Tanners first argue that the Commissioner's decision to issue the notice of deficiency was arbitrary and erroneous because the Commissioner based its notice solely on a Form 1099 issued by Polyphase and did not conduct any other investigation to support its issuance of the notice.  Thus, the Tanners argue, the Tax Court erred in not holding the notice arbitrary and erroneous under Portillo v. Comm'r, 932 F.2d 1128 (5th Cir. 1991).  Unlike the situation in Portillo, however, the Tanners did not raise any factual dispute as to the amount of income.  In fact, the Tanners stipulated to all of the relevant factual issues in this case. They argue only that the $728,000 should not be included in gross income under the Internal Revenue Code, 26 U.S.C. § 83 (2000).  This court has held that "[t]he Commissioner has no duty to investigate a third party payment report that is not disputed by the taxpayer." Parker v. Comm'r, 117 F.3d 785, 786 (5th Cir. 1997).

The Tanners next contend that the Tax Court erred in not placing the burden of proof in this case on the Commissioner, pursuant to I.R.C. §§ 6201(d) and 7491(a)(1).  Yet because the Tanners disputed none of the operative facts, the Tax Court did not err in not placing the burden of proof on the Commissioner.  See I.R.C. § 7491(a)(1) (2000) (burden shifts to Commissioner only when taxpayer introduces evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability); Gale v. Comm'r,

83 T.C.M. (CCH) 1270, 2002 Tax Ct. Memo LEXIS 57, at *21 n.8 (2002) (stating that admission by taxpayer that income was received is sufficient to satisfy Commissioner's burden). Furthermore, since the Tanners' stipulations allowed the Commissioner to satisfy its burden of proof with respect to the unreported income, the Commissioner was entitled to take advantage of the six-year statute of limitations provided for under I.R.C. § 6501(e)(1)(A) (2000).

Reaching the merits, the Tanners contend that the Tax Court erred in applying 26 U.S.C. § 83. Under section 83(a), when property (such as stock options) is transferred to a taxpayer in connection with the taxpayer's provision of services, the taxpayer must generally include in gross income the fair market value of the property at the first time the taxpayer's interest in the property becomes "substantially vested," less the amount paid for the property. I.R.C. § 83(a) (2000); Treas. Reg. § 1.83-1(a)(1). For the taxpayer's interest in the options to be substantially vested, the interest must be transferable or not subject to a substantial risk of forfeiture. Treas. Reg. § 1.83-3(b). Section 83(c)(3) further provides that a taxpayer's rights in property are per se not transferable and subject to a substantial risk of forfeiture (i.e., not substantially vested) if the sale of the property at a profit by the taxpayer would subject the taxpayer to suit under section 16(b) of the Securities Exchange Act of 1934. I.R.C. § 83(c)(3) (2000).

3

The Tanners initially argue that Paul's interest in the Polyphase stock was not substantially vested upon the exercise of his option because, at the time of the exercise, if he had sold the stock he would have been subject to liability under section 16(b) for six more months after the sale.[1] The flaw in this argument was pointed out, however, by the Tax Court's recognition that although Section 16(b) liability can extend beyond six months from the acquisition of the property, Congress did not make the period in Section 83(c)(3) coterminous with the period of the taxpayer's potential Section 16(b) liability. Section 83(c) applies only when the "<u>sale of property at a profit</u> could subject a person to suit under section 16(b)." 15 U.S.C. § 78p(b) (2000). Treasury Regulation Section 1.83-3(j)(1) incorporates this understanding:

> For purposes of section 83 and the regulations thereunder if <u>the sale of property at a profit within six months after the purchase of the property could subject a person to suit under section 16(b)</u> of the Securities Exchange Act of 1934, the person's rights in the property are treated as subject to a substantial risk of forfeiture and as not transferable <u>until the earlier of</u> (i) the expiration of such six-month period, or (ii) the first day on which the sale of such property at a profit

---

[1] Under section 16(b), corporate insiders, such as Tanner, must disgorge to the issuing corporation any profit realized as a result of a purchase and sale, or sale and purchase, of a covered equity security within a six month period. Securities Exchange Act of 1934 § 16(b); 15 U.S.C. § 78p(b) (2000). For purposes of section 16(b), the grant of an option is equivalent to a purchase and the exercise of an option is a nonevent. <u>Magma Power Co. v. Dow Chem. Co.</u>, 136 F.3d 316, 321-22 (2d Cir. 1998) (<u>citing</u> 17 C.F.R. § 240.16b-6(a) (1997)).

> will not subject the person to suit under section 16(b).

Treas. Reg. § 1.83-3(j)(1) (emphasis added). The tax statute and regulations protect a recipient of stock options for the first six months after their grant, consistent with section 16(b), but do not afford the rolling protection sought by the Tanners based on every future event of exercise of the options.

The Tanners finally assert that Paul's interest in the options was not substantially vested and the net income realized upon exercise of the options was not includible in his taxable income under section 83(a) because a lockup agreement with Polyphase prohibited Paul from selling his Polyphase stock for a period of two years. While the lockup agreement did prevent Paul Tanner from selling his Polyphase stock, it did not prohibit him from assigning his Polyphase stock to another (he gave some of his stock to relatives) or pledging it as collateral for a loan. Under the regulations, Paul's interest was plainly transferable and thus substantially vested. Treas. Reg. § 1.83-3(d) (property is transferable and not subject to a substantial risk of forfeiture if it can be sold, assigned, or pledged).

Because the Tax Court did not err with respect to its procedural rulings or in holding the $728,000 to be properly included as income to the Tanners, the decision of the Tax Court is **AFFIRMED.**